## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Peter F. LaChance,

        Plaintiff,

v.

Community Consolidated School District 93,
David Hill,

        Defendants.

No. 1:22-cv-01266

Honorable Nancy L. Maldonado

## MEMORANDUM OPINION AND ORDER

Plaintiff Peter LaChance brings this lawsuit against Defendants Community Consolidated School District 93 (the "Board")[1] and David Hill (collectively, "Defendants") for alleged violations of LaChance's First and Fourteenth Amendment rights under the U.S. Constitution. LaChance alleges the Board and Hill violated his First and Fourteenth Amendment rights by demoting him from his position as a school principal and then terminating him for requesting a hearing before the Board regarding his demotion. LaChance brings these civil rights claims under 42 U.S.C. § 1983 against the Board pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

Defendants have moved to dismiss LaChance's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. 24.)[2] For the reasons stated in this Memorandum Opinion and Order, Defendants' Motion to Dismiss is granted. In short, while LaChance pleaded sufficient facts to allege § 1983 liability under *Monell*, LaChance has failed to

---

[1] Defendants note in their briefing that the Community Consolidated School District 93 is not an entity that is capable of being sued. Rather, the Board of Education of Community Consolidated School District 93 ("Board") is the only entity capable of being sued. As Defendants treated the Complaint as being filed solely against the Board, so too will the Court.

[2] In citations to the docket, page numbers are taken from the CM/ECF headers.

state a claim for a First or Fourteenth Amendment violation. The Complaint is dismissed without prejudice, and LaChance may amend his Complaint by 4/12/24.

### Background

The Court takes the following factual background from the well-pled allegations in the Complaint (Dkt. 1) and assumes the allegations to be true for the purposes of the instant motion. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

LaChance is a former public school principal who worked for Defendant Community Consolidated School District 93 for nearly twenty years. (Dkt. 1 ¶ 7.) The Board is a body politic and corporation organized and chartered under the laws of the State of Illinois. (*Id.* ¶ 4.) The elected School Board conducts the business of administering the public school district. (*Id.*) Hill has been the superintendent of the district since July 1, 2019. (*Id.* ¶ 6.)

LaChance started as an Assistant Principal in 2002 and was later promoted to Principal of Carol Stream Elementary School. (*Id.* ¶ 7.) In 2008, LaChance became the Principal of Jay Stream Middle School, where he worked for nearly twelve years. (*Id.*) LaChance alleges that after years of successful service in this role, in 2020 the Board "reclassified" (i.e., demoted) him from the position of Principal to the position of teacher. (*Id.* ¶ 30.) LaChance alleges that this decision came after his relationship with Hill soured over the preceding years. (*Id.* ¶¶ 18-20.)

Illinois law provides reclassified principals and assistant principals with an opportunity to request both a private and a public hearing before the Board to discuss the reasons for the Board's reclassification decision. *See* 105 ILCS 5/10-23.8b. Here, LaChance claims that upon his request for a hearing with the Board regarding its decision to reclassify LaChance's role, LaChance was informed that he was to be terminated from his position at the school. (Dkt. 1 ¶ 33.) LaChance's termination decision was pursuant to the Illinois School Code, specifically the "Reduction in

Force" program, which groups educators for discharge by seniority and performance evaluation ratings. (*Id.* ¶ 38.) The Complaint alleges that while LaChance for many years received high ratings on his performance evaluations, Hill gave LaChance poor performance evaluation ratings because of his alleged personal animus against LaChance. (*Id.* ¶¶ 23–25.) Because of LaChance's low ratings, upon his reclassification as a teacher, LaChance was placed in an educator group that resulted in his termination. (*Id.* ¶¶ 38, 41.) LaChance argues that this was pretext for his termination, as he claims no administrator level position had been terminated previously pursuant to the reduction in force program. (*Id.* ¶¶ 40–41.)

LaChance now seeks to recover from both the Board and Hill for alleged violations of his First Amendment right to petition and Fourteenth Amendment right to due process under the U.S. Constitution. Specifically, LaChance alleges that the Board and Hill retaliated against LaChance for exercising his First Amendment right to seek redress with the government by requesting a hearing in front of the Board regarding his reclassification. (*Id.* ¶¶ 45–57.) LaChance alleges that Hill and the Board terminated LaChance from his reclassified role as an educator in retaliation for LaChance requesting a hearing on his reclassification decision. *Id.* LaChance also alleges that the District violated his Fourteenth Amendment right to procedural due process by failing to provide a meaningful hearing before the Board on its decision to reclassify LaChance prior to his termination. (*Id.* ¶¶ 58–66.)

LaChance initiated this suit on March 9, 2022. (Dkt. 1.) Defendants responded to the Complaint with a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. (Dkt. 24.) Briefing on the motion is now complete, and the Court will address the motion below.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). The Court need not, however, accept conclusory allegations, or allegations that contain only legal conclusions. *See, e.g., Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (citations omitted). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

Defendants argue that LaChance's claims under the First and Fourteenth Amendment, against both Defendants, should be dismissed under Rule 12(b)(6) for failure to state a claim for relief. Because *Monell* liability is predicated on the existence of an underlying constitutional violation, the Court will first turn to LaChance's constitutional claims. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 505 (7th Cir. 2010).

**A. LaChance's First Amendment Claim**

LaChance's First Amendment claims against the Board and Hill rely on the same underlying facts, specifically LaChance's allegation that the Board and Hill retaliated against him

4

for pursuing his First Amendment right to seek redress with the government by requesting a hearing pursuant to 105 ILCS 5/10-23.8b. (Dkt. 1 ¶ 46.)

To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that his speech was constitutionally protected. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016). A public employee must show that (1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in "promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)).

Defendants argue that LaChance failed to allege that he engaged in constitutionally protected speech, and his claims should therefore be dismissed. (Dkt. 25 at 8.) Defendants argue that, in requesting the hearing pursuant to 105 ILCS 5/10-23.8b, LaChance did not speak as a private citizen on a matter of public concern. (*Id.* at 9–10.)

In response, LaChance argues that the Speech Clause of the First Amendment is not the gravamen of LaChance's claims and therefore the test for a private citizen speaking on a public matter is inapplicable here. (Dkt. 27 at 11.) LaChance argues that because his First Amendment claim is alleged pursuant to the Petition Clause, the only issues before the Court are whether his request for a hearing was a matter of public concern and if the interests of the public outweighed the interests of the District. (*Id.*)

Before addressing the substance of LaChance's argument, the Court rejects LaChance's attempt to distinguish the test for a Speech Clause violation from a Petition Clause violation. The Supreme Court has specifically declined to set forth a separate test for public employees' First Amendment claims under the Petition Clause. While the Supreme Court instructed that "[c]ourts

should not presume there is always an essential equivalence in the two Clauses or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims," at the same time, the *Guarnieri* court concluded that "[t]he considerations that shape the application of the Speech Clause to public employees apply with equal force to claims by those employees under the Petition Clause." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388-89 (2011). This is because "[p]etitions, no less than speech, can interfere with the efficient and effective operation of government." *Id.* The *Guarnieri* court specifically declined to adopt a separate standard for claims under the Petition Clause, explaining that

> [t]he framework used to govern Speech Clause claims by public employees, when applied to the Petition Clause, will protect both the interests of the government and the First Amendment right. If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases.

*Id.* At 398 (internal citation omitted). Moreover, "[a]s under the Speech Clause, whether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], as revealed by the whole record.'" *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147–48, n.7 (1983)). The inquiry into whether LaChance was speaking or petitioning on a matter of public concern, therefore, is still necessary to determine if LaChance has stated a First Amendment violation.

The Court is unable to discern from the facts pled whether, in requesting the hearing, LaChance was acting as a private citizen petitioning the government on a matter of public concern. *See Brooks v. Univ. of Wisconsin Bd. Of Regents*, 406 F.3d 476 (7th Cir. 2005). Under *Guarnieri*, the Court must look at the content, form, and context of the petition for redress. LaChance argues that his petition for a hearing touched on a matter of public concern because his demotion from his position as principal generally raises concerns related to the welfare of children and the ability of the school to deliver effective education. (Dkt. 27 at 12.) At the same time, LaChance concedes

6

that he did not plead facts explaining what he would have addressed during his request hearing with the Board. (*Id.*)

The Court is not persuaded by LaChance's conclusory statements. Because LaChance has not pled that his petition would have involved matters of public interest, he has not stated a First Amendment claim. The "public concern" element "must relate to a community concern and is not satisfied by 'merely a personal grievance of interest only to the employee.'" *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008) (citing *Sullivan v. Ramirez*, 360 F.3d 692, 699 (7th Cir. 2004)). At this stage, it is not enough for LaChance to argue that simply because he was a public employee, his termination and/or reclassification necessarily would have involved public matters – if this were the standard then any government employee's speech or petition regarding termination or demotion would garner First Amendment protection. *Guarnieri*, 564 U.S. at 399 ("in one sense the public may always be interested in how government officers are performing their duties. … [but] that will not always suffice to show a matter of public concern.").

The Court recognizes that "a public employee's speech may still be protected If the speaker's motives were mixed and also included a desire to help the public" because "motive alone does not conclusively determine whether a public employee's speech involves a matter of public concern." *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 984–85 (7th Cir. 2013). At this stage, however, the facts pled in the Complaint are insufficient to infer that LaChance's request for a reclassification hearing was anything other than an attempt to "simply [] further a purely personalized grievance," which would not be a matter of public concern. *Id.* at 986.

In making this determination, this Court is not concluding that LaChance *cannot* make out a First Amendment claim. Rather, the facts pled in the Complaint are insufficient to allow the Court to analyze whether, in requesting the hearing, LaChance was petitioning the Board as a citizen on

a matter of public concern. For these reasons, Counts I and II of LaChance's Complaint are dismissed without prejudice.

**B. LaChance's Fourteenth Amendment Claim**

In addition to LaChance's retaliation claim under the First Amendment, LaChance also alleges that the Board violated his Fourteenth Amendment right to procedural due process by failing to provide LaChance with a meaningful reclassification hearing pursuant to 105 ILCS 5/10-23.8b prior to terminating him.

The Fourteenth Amendment forbids a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner." *Mathews v. Edlride*, 424 U.S. 319, 333 (1976) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "To prevail on a procedural due process claim, 'a plaintiff must establish that a state actor deprived him of a constitutionally protected liberty or property interest without due process of law.'" *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015) (quoting *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005)). A procedural due process claim thus requires the Court to analyze two questions: first, "whether there exists a liberty or property interest which has been interfered with by the State;" and second, "whether the procedures attendant upon that deprivation were constitutionally sufficient." *DuPuy*, 397 F.3d at 503 (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

LaChance's Fourteenth Amendment claim arises from the reclassification procedure for principals and assistant principals as set forth by Illinois law. 105 ILCS 5/10-23.8b. Pursuant to this section of the Illinois School Code, a school board must give written notice of a proposed reclassification if the reclassification results in a demotion or reduction in rank to a position with

a lower salary. *Id.* After receipt of such notice, the school board "shall provide the principal or assistant principal with a written statement of the facts regarding reclassification[.]" *Id.* The principal or assistant principal may then "request and receive" a private hearing with the school board "to discuss the reasons for the reclassification." *Id.* The principal or assistant principal may then also "request and receive" a public hearing on the reclassification. *Id.* The principal or assistant principal may be represented by counsel at either hearing. *Id.* After conclusion of one or both hearings, the school board must give the principal or assistant principal written notice of its decision within fifteen days of whichever hearing is held later, at which point the decision becomes final. *Id.*

LaChance alleges that his right to due process was violated when the Board terminated him from his teaching position prior to affording him a reclassification hearing pursuant to ILCS 5/10-23.8b. (Dkt. 1 ¶¶ 59–62.) LaChance further alleges that this resulted in depriving LaChance of his occupational liberty interest. (*Id.* ¶ 66.)

1. *Whether LaChance has Alleged a Property Interest*

Defendants argue that LaChance's Fourteenth Amendment claim fails because LaChance cannot assert a property interest in his continued employment as a Principal. (Dkt. 25 at 12–13.) In response, LaChance explains that "the fundamental liberty and property interest implicated is Pete's fundamental right to pursue his chosen occupation[.]" (Dkt. 27 at 8); *see also Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 n.2 (7th Cir. 2021) (noting that plaintiff, in opposing a Rule 12(b)(6) motion, was "free to 'elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings.'") (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). At the outset, the Court finds that LaChance has not pled that he had a property interest in his employment as a principal. *See Lyznicki v. Bd. of Educ., Sch. Dist.*

*167, Cook County, Ill.*, 707 F.2d 949, 952 (7th Cir. 1983) (holding reclassification statute "makes employment as a principal employment at will, which *Roth* held created no Fourteenth Amendment property right") (citing *Roth*, 408 U.S. at 578).

LaChance cannot allege that the procedure set forth in 105 ILCS 5/10-23.8b creates such a property right. *See Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018) ("a rule that 'merely provides procedures to be followed does not include a substantive right' if the procedures protect nothing more than employment that can be terminated at will.") (citing *Miyler v. Vill. of East Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008)). Because LaChance was employed at will, the procedures set forth by 105 ILCS 5/10-23.8b do not implicate any substantive due process rights. *See id.* (explaining that rules that "merely provide[] procedures to be followed do[] not include a substantive right if the procedures protect nothing more than employment that can be terminated at will.").

Nor has LaChance pled that he had a property interest in his role as a teacher because he does not allege that he had tenure. *See Lyznicki*, 707 F.2d at 951 (holding that tenured teacher, "if he had been discharged from his teaching position he would have been able to complain that he had been deprived of a property right within the meaning of the Fourteenth Amendment."). This leaves the Court with only LaChance's claim that he was deprived of an occupational liberty interest.

## 2. Whether LaChance has Stated an Occupational Liberty Interest

LaChance correctly notes that a plaintiff may state an occupational liberty interest claim even if the plaintiff does not have a property interest in the specific job. *See Bryant v. Gardner*, 545 F. Supp. 2d 791, 799 (N.D. Ill. 2008) (citing *Klug v. Chi. Sch. Reform Bd. of Trs.*, 197 F.3d

853, 859 (7th Cir. 1999)). LaChance alleges that he was deprived of his occupational liberty interest because he can no longer find employment in his chosen occupation. (Dkt. 1 ¶ 43.)

The government may violate an employee's occupational liberty interest "when, in the course of a discharge, failure to rehire, or other adverse employment action, the employer stigmatizes the employee by making public comments that impugn 'the individual's good name, reputation, honor, or integrity' or impose a 'stigma or other disability on the individual which forecloses other opportunities." *Bryant*, 545 F. Supp. 2d at 798. "The Fourteenth Amendment protects only the individual's liberty to pursue a particular occupation, however, and not the individual's right to any one job." *Id.* To state a claim for deprivation of an occupational liberty interest, a plaintiff must allege: "(1) the employer made stigmatizing comments; (2) the comments were publicly disclosed; and (3) the plaintiff suffered a tangible loss of other employment opportunities as a result." *Id.* "If all the elements necessary to make out an occupational liberty claim are met, the remedy is an opportunity to refute the charge, which allows the person an opportunity to 'clear his name.'" *Id.* (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 & n.12 (1972)).

At the same time, "[l]iberty is not infringed when the individual is only 'somewhat less attractive to some other employers,' as through a label of incompetence or poor management skills … there must be permanent exclusion from or protracted interruption of employment." *Wroblewski v. City of Washburn*, 965 F.2d 452, 456 (7th Cir. 1992) (citing *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985)) (internal citation omitted.) For instance, "[t]he denial of tenure or employment is not, by itself, stigmatizing conduct in the legal sense of the term." *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1184 (7th Cir. 2001). Rather, "a termination is only stigmatizing if it is accompanied by a publicly announced reason that 'impugns [the employee's]

11

moral character,' or implies 'dishonesty or other job-related moral turpitude.'" *Id.* (citing *Lawson v. Sheriff of Tippecanoe Cnty.*, 725 F.2d 1136, 1138–39 (7th Cir. 1984)) (internal citation omitted.) Further, "'not every remark which may arguably affect one's reputation' is actionable; the Fourteenth Amendment protects only against 'charges that might seriously damage one's standing and associations in the community.'" *Bryant v. Gardner*, 545 F. Supp. 2d at 800 (quoting *Ulichny v. Merton Cmty. Sch. Dist.*, 249 F.3d 686, 705 (7th Cir. 2001)).

LaChance claims that other school district employers will not hire him because of the circumstances of his reclassification and termination. (Dkt. 27 at 9.) He argues that the timing of his reclassification and termination at the same time the COVID-19 pandemic caused school closures was "problematic" and created a stigma associated with his termination. (*Id.*) Because LaChance did not have a reclassification before the Board, he argues, he was never given the opportunity to "clear his name." (*Id.* at 9.)

At this stage, the Court finds that LaChance has failed to allege facts sufficient to state a claim for deprivation of an occupational liberty interest. LaChance's conclusory allegations that his termination is adversely affecting his ability to find new employment are insufficient to infer that his standing in the community has been "seriously damaged" or that his moral character has been "impugned." LaChance's claims that the timing of the termination contemporaneous with the beginning of the COVID-19 pandemic do not allege the type of "morally stigmatizing" statements or conduct "strong enough to bestow serious dishonor" on him to state a claim for deprivation of an occupational liberty interest. *Wroblewski*, 965 F.2d at 456. Again, the Court makes no determination as to whether LaChance could ever make this claim, just that he has not done so with the facts alleged here. Because LaChance has failed to allege facts that support a deprivation of his occupational liberty under the U.S. Constitution, his procedural due process claim fails.

**C. § 1983 *Monell* Liability**

The Court recognizes that there can be no *Monell* liability where there is no underlying constitutional violation. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). However, because this Court will grant leave for LaChance to amend his Complaint, the Court observes that LaChance has plausibly alleged the Board could be liable for Constitutional violations under *Monell*. Accordingly, the Court will analyze LaChance's *Monell* allegations as pled.

In order to state a 1983 claim against a municipality or government entity, as opposed to an individual, a plaintiff must meet certain requirements set forth by the Supreme Court in *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). *Monell* held that "[m]unicipalities are not vicariously liable for the constitutional torts of their employees or agents," but rather are only liable "when they themselves cause the deprivation of rights." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); *J.K.J. v. Polk County*, 960 F.3d 367, 376 (7th Cir. 2022). In order to allege a § 1983 claim against a municipality, a plaintiff must allege "(1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

"One way in which a municipality may be liable for a section 1983 violation is if 'an individual with final policymaking authority for the municipality (on the subject in question) caused the constitutional deprivation." *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) (quoting *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 674 (7th Cir.

2009)). Policymakers are "[o]fficials with *final* decisionmaking authority" and courts must "look to state law to determine the scope of such authority." *Valentino*, 757 F.3d at 676. The Seventh Circuit has identified three factors that may inform whether an individual is a policymaker for *Monell* purposes: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Id.* (internal quotations marks and citation omitted). The Seventh Circuit has also instructed that "[f]inal policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). "Customary practices having the force of law may be considered as proof of delegation[.]" *Id.*

The Board argues that it cannot be subject to § 1983 liability under *Monell* because LaChance failed to plead a municipal policy, custom, or action by a final policymaker. (Dkt. 25 at 1.) Specifically, the Board argues that LaChance does not plead an express policy or widespread practice that led to the alleged constitutional deprivation. (*Id.* at 6.) Defendants also argue that LaChance did not sufficiently allege action by a final policymaker because final policymaking authority sits solely with the Board. (*Id.* at 7.) In support of this argument, the Board cites to a provision of the Illinois School Code which sets forth that school boards have the authority "[t]o adopt and enforce all necessary rules for the management and government of the public schools of their district." 105 ILCS 5/10-20.5. In response, LaChance argues that he sufficiently pled the Board was a final policymaker for *Monell* purposes. (Dkt. 27 at 14.)

As a preliminary matter, the Court notes LaChance's argument is not responsive to the appropriate inquiry. The Court looks to whether "a particular course of action is directed by those

who set municipal policy" to determine if the municipality itself may be liable under section 1983. *Valentino*, 575 F.3d at 675. LaChance may not allege this by pleading the Board as an entity was the final policymaker. *See id.*

Setting aside this argument, the Court finds that LaChance has pled sufficient facts to at least plausibly state a claim that the Board can be liable under *Monell* because it delegated final policymaking authority of personnel decisions to Hill. While Defendants' argument that Illinois law grants policymaking authority to the Board is well taken, the Complaint alleges that the Board gave unfettered deference to Hill in creating and implementing policies for personnel decisions. (Dkt. 1 ¶¶ 29, 36); *Kujawski*, 183 F.3d at 739 (holding issue of fact existed as to whether municipal board delegated final policymaking authority to chief probation officer where plaintiff presented evidence that the board never reviewed the officer's personnel decisions, the officer was in charge of the department, and set policies for the department); *Valentino*, 575 F.3d at 678 (reversing grant of summary judgment in favor of defendants where plaintiff presented evidence that mayor was a *de facto* policymaker for the municipality). LaChance alleged that that the Board "entrusted" Hill "to establish and apply rules and procedures … for evaluating the performance of all administrators" and that the Board "relied entirely" on Hill and gave "unfettered deference" to Hill for personnel recommendations. (Dkt. 1 ¶¶ 27, 29.) Specifically, LaChance alleges that the Board approved every personnel recommendation made by Hill. (*Id.* ¶ 36.) LaChance also claims that the vote held by the Board to terminate LaChance was merely "perfunctory" because the vote "was in fact driven and directed solely by Superintendent Hill." (*Id.* ¶ 34.) LaChance has stated facts for the Court to reasonably infer that Defendant Hill was given final policymaking authority on behalf of the Board. The Seventh Circuit has recognized that an official can be a *de facto* policymaker for purposes of *Monell* liability when that official makes personnel decisions as the official sees fit

without any laws or policies to guide the official's decision-making. *See Valentino*, 575 F.3d at 677–78 (finding that mayor was a *de facto* policymaker and further stating "[g]iven that the Village has a population of only a few thousand people and is run by a small government, a legislative framework for personnel decisions may not actually exist"). More specifically, the Seventh Circuit has held that a police chief had "*de facto* authority to set policy for hiring and firing"—and thus that the plaintiff had stated a plausible *Monell* claim—when the plaintiff's complaint suggested that the chief "was fully in charge of the police department and that his firing decisions were not reviewed." *Kristofek*, 712 F.3d at 987.

Here, LaChance alleges that Hill made the final decision to both reclassify and terminate LaChance, with no oversight from the Board. The Court thus finds it plausible that Hill may have had *de facto* authority to set hiring and firing policy, giving rise to *Monell* liability. *See FKFJ, Inc. v. Village of Worth*, No. 18 C 2828, 2019 WL 277723, at *3 (N.D. Ill. Jan. 22, 2019) ("[r]esolving the question at this early stage might be premature, in any case, because it may turn on issues of fact, such as whether the Board of Trustees delegated policymaking authority or ratified decisions of Werner or other village officials."). Whether the evidence ultimately supports that claim is a factual question to be resolved at a later stage. Even though LaChance cannot allege *Monell* liability without an underlying constitutional claim, the Court flags for the parties that LaChance's Complaint plausibly alleges the Board would otherwise be subject to *Monell* liability.

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted without prejudice. LaChance may amend his complaint by 4/12/24.

16

ENTERED:  3/25/24

_____

Nancy L. Maldonado

United States District Court Judge